**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JD Merrick, | No. CV-17-00014-TUC-DCB |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Linderman, et al., | |
| Defendants. | |

The discovery matters now being fully briefed, the Court allows 30 days for discovery to be completed as described below, with any dispositive motions to be filed by January 15, 2019, and the Joint Pretrial Order due by February 15, 2019. THERE SHALL BE NO FURTHER EXTENSIONS OF TIME FOR DISCOVERY.

The Plaintiff has filed three Motions to Compel/Sanctions and Defendants have filed one Motion to Compel and a Motion for Protective Order. The Plaintiff has filed a Motion for Clarification regarding the Court's dismissal of Defendant Monson. Both parties agree the reinstatement of Defendant Monson in Count IV. *See* (Response (Doc. 199) at 1 (no objection to Defendant Monson in Count IV)).

The Court denies the Plaintiff's request for sanctions, grants in part and denies in part the motions to compel, denies the Motion for Protective Order, and grants the Motion for Clarification.

/////

/////

Motions for Sanctions

Both sides complain that the other has failed to comply with Rule 37 of the Federal Rules of Civil Procedure, which requires that a Motion to Compel must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Fed. R. Civ. P.37(a)(1). Plaintiff seeks sanctions against the Defendants, which the Court denies.

This Court directed that in the event of a dispute over discovery matters, the parties should first "engage in personal consultation regarding the dispute and [] make a sincere effort to resolve the conflict. The parties should act to resolve discovery disputes quickly." (Scheduling Order (Doc. 43) at 2.) As this Court noted when it considered a previous Motion to Compel from the Plaintiff, the Defendants may communicate with the Plaintiff in writing or call him, whichever form of communication they believe will be the most efficient way to expeditiously resolve [disputes]." (Order (Doc. 114) at 4.) To be clear, both parties, Plaintiff and Defendants, may confer in writing or by telephone as long as each side "present[s] to each other the merits of their respective positions with the same candor, specificity, and support during the informal negotiations as during the briefing of discovery motions." *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d. 1137, 1145 (Nevada 2015)). In respect to the pending discovery disputes, the parties have now conferred in writing. Below, the Court resolves the remaining discovery disputes.

Defendants' Motion for Protective Order (Doc. 149)

On July 16, 2018, the Defendant filed an objection to Requests for Admissions served by the Plaintiff on Defendants on June 13 and June 15, 2018, because the discovery deadline was July 5, 2018. Rule 36 of the Federal Rule of Civil Procedure allows a matter to be admitted or denied within 30 days of service. Defendants argued the Requests for Admissions were untimely. On review of the record, it appears that the Motion for Protective Order was in response to the Plaintiff's decision to file a Motion to Enlarge Time for Discovery (Doc. 145), but this was not entirely clear until the

Defendants filed the Reply in Support of the Motion for the Protective Order. (Reply (Doc. 155) at 1.) In ruling on the Motion to Enlarge the Time for Discovery, the Court denied it without prejudice to be decided based on the outcome of the then pending discovery motions being ruled on here.

In addition to reviewing the briefs related to the Motion for Protective Order, the Court has reviewed the briefs related to the Motion to Enlarge Time for Discovery, including the Defendants' Response. The Court finds that Defendant made two objections: 1) untimeliness and 2) the sheer volume of discovery requests to which Defendants had already responded. The Court finds that the evidentiary value of admissions cannot be duplicated by other discovery requests. The Court has now determined that pending resolution of Plaintiff and Defendants' discovery disputes, it will allow the parties a 60 day extension of time to complete any remaining discovery. (Order (Doc. 200) at 2.) Accordingly, the Motion for Protective Order is DENIED. The Defendants shall answer the June 13 and 15, 2018, Requests for Admissions.

<u>Plaintiff's Motion to Compel and Motion/Sanctions (Doc. 157)</u>

Request for Production No. 1: Plaintiff challenges production of two mail policies, DO 914.08.21 dated 2/26/2010 and DO 914.07.1.3 dated 3/4/2016, as inconsistent with Defendant Warford's response to Interrogatory No. 18. Interrogatory No. 18 asked: "After Plaintiff's lawsuit herein was filed in January 2017, were you told by authorities at Central Office to stop seizing material from online pen pal services." Warford answered: "No. DO 914 was <u>subsequently</u> amended to allow inmates to receive mail from on line pen pal services, subject to the publication review process." (emphasis added). Plaintiff notes that both policies disclosed by Defendant predate his law suit. He believes that Defendant has failed to disclose the amendment of DO 914, referenced by Warford in answer to Interrogatory 18 that was made subsequent to the filing of his law suit. Use of the term "subsequently" by Warford appears to have inaccurately described the timing of the amendments. The mail at issue in Plaintiff's law suit was seized June 25 and 27, 2015, under the 2010 DO 914.08 policy, which was amended March 4, 2016

after the seizure but prior to the January 2017 filing of the law suit.  DENIED.

Request for Production No. 6: Plaintiff is willing to compromise on this request to lessen the burden on Defendant to search records where there is no central data base.  He seeks production of ASPC-Tucson records for contraband notices and/or for Office of Publication Review (OPR) decisions that reflect that Prison Inmate Online (PIO) sent their brochure to other inmates besides the Plaintiff and mailroom Defendants contrabanded the PIO brochure for any such prisoners and sent it back to PIO.  (Reply (Doc. 172) at 8.)  Defendant argues that Plaintiff's mail was seized because of inmate visitation photographs that had been altered and sent back into the institution through the mail.  (Response, Ex. A (Doc. 166-1) at 2.)  The Plaintiff argues the records are relevant to prove the Count Four allegations that Defendant adhered to an unofficial policy and kept returning mail sent from PIO to the Plaintiff to PIO.  (Screening Order (Doc. 161) at 5-6); (Fourth Amended Complaint (Doc. 162) at 17-23, ¶ 39) (alleging that PIO sent a message to Plaintiff via his parents that it was able to correspond with other ADC prisoners but not him—Defendants Frame, Warford, and other mailroom staff were intentionally targeting him).  Plaintiff does not allege that Defendant returned PIO mail to PIO for other inmates.  Therefore, records for other inmate PIO correspondence is of limited, if any, evidentiary value and does not warrant the burden of the search on the Defendant even if limited to ASPC-Tucson.  DENIED.

### Plaintiff's Motion to Compel/Sanctions (Doc. 178)

Irby Request for Production No. 6: *See* Order (Doc. 196) (granting in part and denying in part Defendants' Motion for Protective Order for disclosure of Arizona Department of Corrections (ADC) Authorized Religious Property Lists from 2015, 2016, and 2017).

Irby Interrogatory No. 5: Plaintiff asks Irby to "identify any and all agreements signed by Plaintiff that show he agreed to 'abstain from purchasing food items at the inmate store that [the ADC and its agents allege] are not Kosher certified.'"  (Motion (Doc. 137) at 5.)  Irby responded by identifying the Restricted Diet Order signed by

Merrick on December 30, 2015 and the settlement agreement in *Merrick I*. The remainder of both parties' responses contain argument as to whether or not these two things are agreements and/or what these documents say. Accordingly, the interrogatory has been answered. DENIED.

Irby Interrogatory No. 6: Defendant Irby answered that he did not have access to information pertaining to the cost of a Kosher Diet compared to a regular inmate diet. Defendant has produced records showing the relative costs in the First Supplemental Disclosure Statement Bates No. 00137-00192. DENIED.

Irby Interrogatory No. 8: "What ADC official would be responsible for authorizing policy that states inmates must abstain from purchasing food items at the inmate store that does not have a certified kosher mark while on the diet?" Irby responded that the Director of the ADC has delegated to the Pastoral Administrator the responsibility to authorize and implement its inmate religious diets, and Plaintiff inquired as to whether there is someone else responsible for policies. According to Defendant, "There is no one else. Irby's response merely indicated that the Director delegates various aspects of his authority over the ADC's policies to other staff and one of those is the Pastoral Administer, [Defendant Linderman]." (Response (Doc. 188) at 4.) GRANTED: The Defendant shall clarify whether Linderman has policy making authority over the requirement that inmates must abstain from purchasing food items at the inmate store that does not have a certified kosher mark while on the diet? If not, Defendants shall disclose the person with such policy making authority.

Linderman Interrogatories Nos. 3-4, 14: Counsel provided Linderman with the Director's grievance packets for the specific inmate grievance appeals that Merrick specifically identified and, Linderman, responded accordingly. WITHDRAWN.

Linderman Interrogatory No. 12: Linderman responded he had never seen a list as described in the interrogatory. DENIED.

Linderman Interrogatory No. 13: Plaintiff seeks identities of individuals. "Members of the Religious Review Committee" is not an answer to this question.

GRANTED: Linderman should identify all the particular names he can remember.

Linderman Interrogatory No. 18: Linderman has not answered the question: What reason did you have for not authorizing Plaintiff to have access to [religious] DVDs that weren't donated, but rather purchased, apart from the settlement?" GRANTED.

Hoyt Interrogatory No. 6: DENIED, Plaintiff's challenge here is nothing more than an obvious mistake in citation to the Inmate Mail, March 4, 2016, policy as 914.1.7.1.19 instead of 914.02., subsection 1.7.1.19, which is "A printed individual item (not a supplement of an item such as a newspaper), specifically intended for the purpose of advertising or selling merchandise (catalog, circular) for any items that an inmate would not be permitted to receive."

Hoyt Interrogatory No. 14: "When you were addressing Plaintiff's grievances relevant to Count 4 and or 5 of Plaintiff's TAC, did you hold the position that any material sent in to Plaintiff from an online pen pal service was contraband?" Defendants misread the question and answered, no "she did not predetermine her responses to his grievances; she applied policies and procedures and based her decisions on them." GRANTED: Hoyt should answer the interrogatory as to whether one of those policies and procedures she was applying when she addressed his grievances was that any material sent in to Plaintiff from an online pen pal services was contraband?

Warford Interrogatory No. 2: Plaintiff sought Warford's training record relevant to the mail room. Defendant produced Exhibit C, her training records. Plaintiff notes, "Exhibit C makes NO mention about her mailroom training." He complains that if she is asserting she had no formal mail room training, she must be made to answer the interrogatory accordingly. DENIED.

Ryan Request for Production No. 1: ADC investigative file pertaining to the "Corene Kendrick" letter. Defendants respond the ADC records contain no investigative report. DENIED.

Ryan Interrogatory No. 3: Plaintiff asks for the reason supporting the policy of not allowing inmates to receive authorized religious property from ADC authorized vendors

that is purchased by family or friends. Defendant Ryan did not provide the reason for the policy. GRANTED.

### Plaintiff's Motion to Compel/Sanctions (Doc. 179)

Ryan Request for Production No. 5: Documents that reflect ingredients used in making general inmate meals. DENIED: Not relevant.

Ryan Interrogatory No. 3: DENIED: Not relevant.

Ryan Interrogatory No. 8: Ryan has no personal knowledge of any hypothetical involving the seizure of outgoing legal mail as long as the prisoner is reporting a possible crime to a lawyer and Defendants have disclosed inmate mail policy DO 902. DENIED.

Ryan Interrogatory No. 16: Again, Ryan declines to answer because he is not involved in inmate food services, but then "testified that the ADC does not currently plan to create a "messianic Kosher Diet." (Response (Doc. 189) at 3-4.) This suggests that Ryan does have personal knowledge sufficient to answer the interrogatory question about why Ryan will not authorize a TOMJ diet? GRANTED.

Ryan Interrogatory No. 19: Plaintiff seeks the names of ADC Legal Services staff from 2016 to the end of 2017 because they were directly involved in the seizure of the mail involved in Counts 4-6. This would only entitle Plaintiff to the names of any attorney so involved and only if Plaintiff alleged a constitutional violation by him or her, which is not alleged. DENIED.

Ryan Interrogatory No. 21: Prior to the filing of this law suit, Ryan had no knowledge nor involvement in the alleged mail seizure which is the subject of Counts 1-4 for "UNAUTHORIZED CORRESPONDENCE" and "CONTRARY TO PRISON REGULATIONS." DENIED.

Ryan Interrogatory No. 23: Plaintiff asks why Policy DO 914 does not require inmates to be told the reason(s) why a piece of mail is deemed contraband, unauthorized, or contrary to prison policy. GRANTED.

Warford Interrogatories Nos. 4 and 21: Plaintiff's Interrogatory 4 is a compound question asking if she remembered at any time returning Plaintiff's mail to sender and not

notifying him. She answered no, not to her recollection. In Interrogatory 21, after being shown specific pieces of mail, she admitted to being responsible for returning to sender two of them. Plaintiff seeks to have Warford amend her answer to Interrogatory 4 as being inaccurate. DENIED.

Warford Interrogatories Nos. 6, 22 and 23: Again, the first interrogatory sought Warford's recall without attendant production of documents and elicited a response that she had no recollection. A follow-up interrogatory, with attached documentation, elicited the information sought by the Plaintiff. DENIED.

### Defendants' Motion to Compel (Doc. 187)

Ryan's Discovery

Request for Admission No. 6: Ryan asked Plaintiff to admit/deny "you have never provided to the ADC a definition of a Torah Observant Messianic Judaism Diet? Plaintiff denied it. Pursuant to Interrogatory 25, Defendant asked Plaintiff to identify any evidence to support any denial. As evidence of the denial, Plaintiff references his Motion for Summary Judgment and Motion for Preliminary Injunction filed in CV 08-290 TUC AWT, and that he told Defendants Irby, Linderman, and Ramos. Plaintiff may not refer, especially broadly, to other documents to identify the facts and evidence supporting his claims against Defendant. He must provide the specific reference, including citation to the record, for the Motion for Summary Judgment and Motion for Preliminary Injunction. Defendant Ryan did not ask the Plaintiff to define the TOMJ diet. GRANTED IN PART AND DENIED IN PART.

Interrogatory No. 12: Plaintiff may not refer, especially broadly, to other documents to answer this Interrogatory. GRANTED: Plaintiff shall state all facts supporting his claim that the parties to the Settlement Agreement in Merrick v. Schriro, CV 08-209 TUC AWT, agreed to provide him with a TOMJ diet?

Linderman Discovery

Interrogatory No. 20: Defendant sought to find out if a medical professional has ever told Plaintiff that his weight loss constituted a serious medical condition. GRANTED.

1 | <u>Irby Discovery</u>
2 | Interrogatories Nos. 1-3: Plaintiff may not refer, especially broadly, to other documents to identify the facts and evidence supporting his claims against Defendant Irby. GRANTED.

<u>Hoyt Discovery</u>
Interrogatories Nos. 1-2: Plaintiff may not refer, especially broadly, to other documents to identify the facts and evidence supporting his claims against Defendant Hoyt. GRANTED.

<u>Wareford Discovery</u>
Interrogatory Nos. 1-2, 7, and 8: Plaintiff may not refer, especially broadly, to other documents to identify the facts and evidence supporting his claims against Defendant Wareford. GRANTED.

Interrogatory No. 5: Defendant asks Plaintiff to identify every piece of mail he alleges was addressed to him that was improperly confiscated or returned to sender by Warford instead of being delivered to him. Just because the question asks for a list of items does not make it an improper compound question. GRANTED.

Request for Admission No. 1: Plaintiff denied knowing the specific contents of the mail that was sent by PrisonInmatesOnLine (PIO) and allegedly returned by Warford to PIO as being not allowed. Defendant complains the Plaintiff failed to identify what he believed its contents were and must describe the contents of the mail in question if he believes he knows what it was. If Defendant wanted this information, he was free to seek it by interrogatory. DENIED.

<u>Garcia Discovery</u>
Interrogatories 6-7: Plaintiff objects to questions related to correspondence he allegedly sent to attorney Kendrick about the circumstances involving the death of another inmate. The Court overrules the Plaintiff's objection that this information is already known. GRANTED.

**Accordingly,**

**IT IS ORDERED** that the Motion to Compel (Doc. 178) is GRANTED IN PART AND DENIED IN PART, as explained herein.

**IT IS FURTHER ORDERED** that the Motion to Compel (Doc. 179) is GRANTED IN PART AND DENIED IN PART, as explained herein.

**IT IS FURTHER ORDERED** that the Motion for Protective Order (Doc. 149) is DENIED.

**IT IS FURTHER ORDERED** that the Motion to Compel (Doc. 157) is GRANTED IN PART AND DENIED IN PART, as described herein.

**IT IS FURTHER ORDERED** that the Motion to Compel (Doc. 187) is GRANTED IN PART AND DENIED IN PART, as described herein.

**IT IS FURTHER ORDERED** that the Motion for Clarification (Doc. 207) is GRANTED.  The Clerk of the Court shall reinstate Defendant Monson in Count IV.

**IT IS FURTHER ORDERED** that discovery is extended by 60 days from the filing date of this Order for the sole purpose of completing the discovery compelled herein.  THERE SHALL BE NO FURTHER EXTENSIONS OF TIME.

**IT IS FURTHER ORDERED** that dispositive motions shall be due within 90 days of the filing date of this Order.

**IT IS FURTHER ORDERED** THAT FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN SANCTIONS.

**Dated this 16th day of November, 2018.**

_____
Honorable David C. Bury
United States District Judge